**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MELVIN SPARKS and ANGELA SPARKS,

    Plaintiffs,

v.                                                                           Case No. 17-11330

EQUITYEXPERTS.ORG, LLC,

    Defendant.
                                               /

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT**

Plaintiffs Melvin and Angela Sparks claim that Defendant EquityExperts.Org, LLC, violated the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Occupational Code ("MOC") while trying to collect on Plaintiffs' overdue homeowner's association account. Before the court are the parties' stipulated factual record, their cross motions for judgment, and their court-ordered additional briefing. (Dkt. ##22, 24, 25, 27, 33, 34.) For the following reasons, Plaintiffs' motion for judgment is denied, and Defendant's motion for judgment is granted in part and denied in part.

**I. BACKGROUND**

Plaintiffs own real property in Virginia. When they accepted title to the property, they agreed—under the Association's governing documents—to pay certain fees to their homeowner's association, Four Mile Run Homeowner's Association, Inc. (the "Association"). Those governing documents also dictated what would happen in the event that Plaintiffs failed to pay those fees:

> The annual and special assessments, *together with interest, costs and reasonable attorney's fees*, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made.

(Dkt. #22-12 Pg. ID 154 (emphasis added).)

Plaintiffs fell behind on their payments. On December 12, 2016, they owed $220.00 in past due fees and assessments. The Association assigned Plaintiffs' account to Defendant for collection. Defendant promptly sent Plaintiffs a letter, dated December 13, 2016, to collect the debt. The letter in part informed Plaintiffs that "[t]he Association reports that you have not paid your share of the Association's assessments and your total unpaid balance is $490.00." (Dkt. #22-4 Pg. ID 133.) The letter warned that the stated balance "may also include special assessments, interest, fees, and/or fines charged by the Association, and any attorney's fees and collection costs incurred by the Association to collect the debt." (*Id.*) The record reveals that the $270.00 difference between Plaintiffs' overdue balance and the stated debt amounted to the alleged "costs" for completion of Defendant's "FDCPA Compliance Assurance Package/Pre-Lien Review" Process (Dkt. #25 Pg. ID 239)—and the heart of the parties' dispute.

A little over three weeks after Defendant sent its first letter, Plaintiff Angela Sparks called Defendant three times; no one answered the phone, and she left a voicemail to conclude each call. (Dkt. #22-3 Pg. ID 130.) The voicemails went unreturned.

Defendant sent another letter in February 2017, this time informing Plaintiffs that Defendant had "proceeded with the next step in [its] collection process and an additional $350.00 collection cost has been charged to the [A]ssociation to be added to your

2

balance." (Dkt. #22-5 Pg. ID 134.) The $350.00 apparently represented Defendant's additional collection costs for what it terms "Escalated Outreach." (Dkt. #22-6 Pg. ID 135; Dkt. #25 Pg. ID 239.)[1]

Plaintiffs received a "Statement" from Defendant dated March 3, 2017. The Statement reflects a $70.00 payment from Plaintiffs and a remaining balance due of $1,075.00. (Dkt. #22-6 Pg. ID 135.) A few days later, Plaintiff Angela Sparks spoke on the phone with one of Defendant's representatives. (*See* Dkt. #22-3 Pg. ID 131.) Despite the parties' averment to the court that they agreed to all the material facts in this case (*see* Dkt. #19), there is a dispute about what happened during that call: Plaintiffs say that the parties agreed to settle the debt for $330.00, an amount Plaintiffs paid in early March 2017 (*see* Dkt. #22 Pg. ID 116–17); Defendant says that the settlement was predicated on payment of $225.00 to the Association, which was never completed (*see* Dkt. #24 Pg. ID 225–26); Plaintiff replies that the $225.00 payment was made in two separate installments (*see* Dkt. #27 Pg. ID 258).[2]

Defendant continued its collection efforts, sending another letter in March, two in April, and one in May. (*See* Dkt. #22-2 Pg. ID 128–29.) The last letter including a dollar amount owed was dated March 24, 2017—it represented that the "balance due" for Plaintiffs' file was $800.00. (Dkt. #7.) As of May 16, 2017, Plaintiffs' account history with

---

[1] Defendant claims that it sent additional correspondence to Plaintiffs around February 13, 2017. (Dkt. #24 Pg. ID 225.) But if such a letter was sent, it is not in the record, and Plaintiffs did not stipulate to its existence. (*See* "Statement of Stipulated Facts," Dkt. #22-2 Pg. ID 128.)

[2] Following the court's conference with the parties, they agreed that this factual dispute would remain outstanding, incapable of resolution in this order. (*See* Dkt. #31.)

the Association provided for an overdue balance of only $172.77. (Dkt. #22-11 Pg. ID 141.)

## II. DISCUSSION

As the court has already observed, the FDCPA was enacted in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Both sides are in agreement that the FDCPA applies to the parties' transactions in this case. They agree that, as defined by the FDCPA, Plaintiffs are "consumers," Defendant is a "debt collector," and the debt at issue is a "debt." See § 1692a(3), (5), (6); Dkt. #22-2 Pg. ID 127. The parties dispute, however, whether Defendant violated a substantive provision of the FDCPA.

On first review of this case, the court explained that it was uncertain whether Defendant could recover its own costs of collection; from the evidence and arguments presented, it could not tell whether Defendant's costs of collection would eventually be borne by the Association in the event the debt remained unpaid:

> The court is concerned primarily with the FDCPA's requirement that the costs charged to the consumer are "expressly authorized by the agreement creating the debt," § 1692f(1). The parties agree that the Association could charge its own collection costs to Plaintiff. If Defendant was eventually going to pass on the costs to the Association, then the Defendant's costs would, in effect, be the Association's costs chargeable to Plaintiffs. But the court is unconvinced that Defendant could unilaterally charge its *own* costs—costs not borne by the Association either upfront or eventually—to Plaintiff. Nothing about the Association's papers seems to "expressly authorize" some then-uninvolved third party to collect its own collection costs.

(Dkt. #29 Pg. ID 264.) Following a conference with the parties, the court ordered further briefing on the issue. (*See* Dkt. #31.) The court relies on the submitted briefing, in addition to the original cross motions for judgment, in coming to its decision here.

4

## A. Defendant's Agreement with the Association

Defendant—in response to the court's inquiry—has attached to its supplemental brief its various agreements with the Association. As an initial matter, the court notes that only two are relevant here: the 2016 and the 2017 agreements, which were the contracts in place during the events alleged in the complaint.[3] The court will not take into account the 2018 agreement.

Both the 2016 and 2017 agreements answer the court's initial question in this case: Who would be responsible for the costs of collection in the event the debt remained unpaid? The answer: the Association. Under the terms of the Association's agreements with Defendant, either party could terminate the agreement "with no further obligation to each other with respect to the accounts returned," *except* that the Association maintained an "obligation to pay [Defendant's] unpaid fees as set forth in Schedule A and B." (Dkt. #33-1 Pg. ID 288; *see also* Dkt. #33-1 Pg. ID 294.) In the event that either party cancelled the agreements, in other words, the Association had a contractual obligation to pay any remaining costs of collection.

Plaintiffs resist this reading of the contract; they argue that "Defendant advertises that its clients have no out-of-pocket costs," and "[t]hus, Defendant's reference to an alleged obligation by the Association to pay Defendant's fees is unfounded." (Dkt. #34

---

[3] Plaintiffs argue that the court should disregard the 2017 agreement because it was not signed by the Association, meaning it is nonbinding. (Dkt. #34 Pg. ID 305.) But Defendant has explained that, per the terms of the 2016 agreement, it was permitted to update the contract at any time, and any changes would go into effect unless contested by the Association. (*See, e.g.*, Dkt. #33-1 Pg. ID 288.) Because the Association did not object to the updated 2017 agreement, it went into effect in April 2017. (*See* Dkt. #33-1 Pg. ID 283.) Plaintiffs' argument that the agreement was ineffective because unsigned is therefore unavailing, and there is no genuine dispute that the 2017 agreement was in effect starting in April 2017.

Pg. ID 307.) The court is puzzled by the reference to an "alleged obligation"—Plaintiffs seem to suggest that Defendant never actually intended to recover its collection costs from the Association, so these costs cannot properly be considered. But that argument ignores the plain language of the agreement, which creates an actual—not "alleged"—contractual obligation to pay those fees in the event the agreement was terminated.

In support of its ability to pass on these collection costs, Defendant cites cases in which costs and attorney fees were properly passed on to consumers. Defendant, for example, relies heavily on *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953 (E.D. Mich. 2015) (Lawson, J.). (*See* Dkt. #24 Pg. ID 226–30.) In *Wilson*, the plaintiff complained that the law firm hired to collect his mortgage debt improperly tried to charge him "corporate advances" comprised of foreclosure expenses, attorney fees, bankruptcy fees, and other expenses "paid with servicer funds that are to be recovered from the borrower." *Id.* at 959. The court held that the plaintiff could properly be required to pay the corporate advances because his mortgage agreement—the agreement creating the debt—allowed the lender to charge "fees for services performed in connection with Borrower's default," including "attorneys' fees, property inspection and valuation fees," among others. *Id.* at 960. Interestingly for the purposes of this case, *Wilson* does not explain whether the "corporate advances" charged to the plaintiff were costs that would be charged to the lender in the event that the plaintiff never paid. It seems likely that at least some of the charges—especially the attorney fees—would eventually be charged to the lender. But the opinion leaves that distinction unanswered.

Cases from the Seventh Circuit fill the gap. That court has held that "when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt

collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA," even where the debt collector has specified an amount that it "intend[s] to charge" to the creditor. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004); *see also Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004) ("[A] debt collector may include attorney fees and collection costs in the dunning letter when the underlying contractual relationship between the debtor and the creditor provided for the recovery of such fees and costs.").

There is a good reason for allowing debt collectors to include those fees in the letters seeking to collect the underlying debt: failure to do so—resulting in *subsequent* letters seeking to collect the attorney fees and costs incurred when the original debt was being collected—could be misleading. *See Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2017 WL 4948544, at *3 (N.D. Ill. Nov. 1, 2017) ("How could it possibly harm or mislead the debtor for a debt collector to set forth both amounts (the principal amount due and the collection fee) in a single letter, as opposed to first collecting the original debt and only then revealing and seeking payment of the collection fee?"). For that reason, the court is unpersuaded by Plaintiffs' argument that the fees could not be charged because Defendant's agreement with the Association had not yet been terminated. Specifically, Plaintiffs argue that the charged costs were not yet an obligation of the Association because the agreement had not been terminated—an event Plaintiffs say was necessary to trigger the existence of the obligation. (Dkt. #34 Pg. ID 307.) According to Plaintiffs, "the Association could not incur any collection costs from Defendant until after the collection ha[d] ceased and the account [was] returned or terminated, which means

7

the homeowner can never be liable for Defendant's costs while Defendant is trying to collect from the homeowner." (*Id.* (emphasis omitted).) Not so. The obligation existed unless and until Defendant's costs—costs of collection under the Association's governing documents—were either paid by Plaintiffs or passed back to the Association. That the obligation was *unenforceable* on the Association until the agreement was terminated does not mean the obligation was nonexistent; it was going to be paid by someone. Under the terms of the Association's governing documents and Defendant's contract with the Association, Defendant's costs—as costs that would eventually be borne by the Association—could properly be charged up front to Plaintiffs.

### B. Fees Charged

But the court's inquiry does not end with Defendant's ability to charge its costs directly to Plaintiffs. The court has identified yet another lingering issue of fact: whether the costs charged under the terms of Defendant's contract with the Association were actually authorized by that agreement. In what seems to be a recurring pattern in this case, Defendant sets forth half of the analytical inquiry and then expects the court to fill in the rest. In this case, Defendant has failed to set forth how its charged costs lined up with the agreement between it and the Association.

As noted above, Defendant's agreement with the Association provided that the Association had an obligation to pay Defendant's "unpaid fees as set forth in Schedule A and B." (Dkt. #33-1 Pg. ID 288.) According to Defendant, the initial $270.00 in "costs" charged directly to Plaintiffs was billed for Defendant's "FDCPA Compliance Assurance Package/Pre-Lien Review" Process. (Dkt. #25 Pg. ID 239.) The problem for Defendant is that no such cost appears in Schedule A or B. (*See* Dkt. #33-1 Pg. ID 290.) Both the

8

2016 agreement (in effect when Defendant initially attempted to collect Plaintiffs' outstanding fees in December 2016) and the 2017 agreement set forth a charge for an "FDCPA Compliance Package" at $175.00, not $270.00. The discrepancy *could* be explained by a $95.00 charge provided in Schedule A for an "Intent to Record Lien Letter." (*Id.*) But the court is unwilling to make the assumption—especially given that the letter sent to Plaintiffs never included any avowed "intent" to record a lien on Plaintiffs' property. Whether the particular costs that Defendant attempted to pass onto Plaintiffs were actually obligations of the Association, therefore, is necessarily a disputed material fact.

### III. CONCLUSION

The court agrees with Defendant that it could properly charge Plaintiffs the costs of collection that would eventually be borne by the Association in the event the debt remained unpaid. But Defendant has not satisfied the court that the costs charged were actually costs the Association was obligated to pay. That issue, together with the details of the parties' alleged settlement of the debt, will remain outstanding issues of fact for determination by a jury. Accordingly,

IT IS ORDERED that Plaintiffs' motion for judgment (Dkt. #22) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for judgment (Dkt. #24) is GRANTED IN PART and DENIED IN PART. It is GRANTED in that Defendant could properly charge Plaintiffs the costs of collection that would eventually be borne by the Association in the event the debt remained unpaid. It is DENIED in all other respects.

s/Robert H. Cleland            /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: July 12, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 12, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner                    /
Case Manager and Deputy Clerk
(810) 292-6522

Z:\Cleland\KNP\Civil\17-11330.SPARKS.Cross.Motions.Judgment.KNP.docx